UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUSAN BLANKENSHIP, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:08CV01168 ERW |
| ) | |
| THOMAS J. CHAMBERLAIN, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss Case for Failure to State a Claim, Motion to Dismiss for Failure to Join Necessary and Indispensable Parties, or in the alternative, Motion to Strike and Motion for More Definite Statement [doc. #39].

## **I.     BACKGROUND**[1]

Plaintiffs Susan Blankenship, James Rolufs, Richie Giuffrida, Daniel Bishop, John Byrom, Donna Lukasek, Janel Campbell, Lorri Christophel, Charles Fulford, Gary Geiser, Patricia Skiles, Heather Ordner, Robert Biondo, Karen Lamberti, Erica Miller, Fred Davis, Kary Wiley, Regina Cannon, Carol Vaughn, Lawrence Kennedy, Anthony Bozzi, Tammy King, Emily Wakefield Bakota, and Lois Hunter (collectively, "Plaintiffs") are individual participants in the Contemporary Carpet Contractors, Inc. Employee Stock Ownership Plan and Trust ("the ESOP"), under which they are the beneficial owners of more than 80% of the shares of Contemporary Flooring and Design, Inc. ("Contemporary"). Defendant Thomas Chamberlain ("Defendant") was Contemporary's sole shareholder until February 2001, when, in conjunction

---

[1]For purposes of this Motion to Dismiss, the facts alleged by Plaintiffs in their Second Amended Complaint [doc. #45] are taken as true.

with the formation of the ESOP, Defendant sold all of his shares of Contemporary stock to the ESOP for $3 million. The ESOP has since owned all of Contemporary's outstanding shares.

The stock purchase was facilitated by a loan for the full $3 million from Contemporary to the ESOP, which was in turn financed by a $3 million loan to Contemporary by Allegiant Bank, with the Contemporary stock pledged as collateral. Under the terms of the loan, the Bank released the pledged stock as the ESOP repaid the loan, which the ESOP then allocated to the stock accounts of eligible beneficiaries. In order for the ESOP to be able to make payments on the loan, Contemporary was required to make annual cash contributions to the ESOP while the loan remained due and owing, based on percentages of its participants' earnings.

The stock purchase agreement between Defendant and the ESOP also provided for Contemporary to enter into a separate agreement with Defendant, retaining him as Contemporary's president, CEO, chairman of its board of directors, and, most significantly to this litigation, sole trustee of the ESOP. The employment agreement guaranteed Defendant a $75,000 annual salary, insurance coverage for him and his wife, reimbursement of business expenses, and the payment of membership and assessment fees at two country clubs. It also required Contemporary to keep Defendant in his positions with the company until the loan was repaid, at which point Contemporary would have the option to terminate his employment upon sixty days written notice.

From the execution of the stock purchase and employment agreements in 2001 through 2004, Defendant stopped actively managing Contemporary, and his duties fell to three vice-presidents – Plaintiffs Rolufs, Guiffrida, and Kennedy. Over that period, Contemporary grew significantly in terms of its revenues and overall profitability. This allowed Contemporary

management to accelerate payments on the ESOP loan, with the expectation that it would be paid in full by 2006, five years prior to its scheduled maturity.

In 2004, Defendant returned to managing Contemporary and removed Rolufs, Guiffrida, and Kennedy from Contemporary's board of directors.[2] Then, without seeking authorization or approval from Contemporary's vice-presidents, its board of directors, the ESOP, or the ESOP's participants, Defendant refinanced the ESOP loan – rescheduling its maturity date to sometime in 2017 and taking on significantly higher loan-interest payments – in order to make it impossible to meet the anticipated 2006 pay-off date. Defendant did so with the knowledge that if Contemporary had remained on the accelerated loan payment schedule, it would have been entitled to terminate his employment as soon as the loan obligation was satisfied. In addition, Plaintiffs claim that Defendant took a number of actions that exceeded his authority between 2004 and 2008, such as paying himself a $125,000 salary, receiving distributions from Contemporary's net profits, and using Contemporary funds for personal expenses including vehicles and vehicle insurance, carpeting for his private residence, and legal and accounting fees.

Plaintiffs also assert that Defendant entered into a series of one-sided real estate transactions with Contemporary during 2005-2007. In 2005, Defendant purchased an undeveloped piece of real estate and constructed an office/showroom/warehouse facility, with the intention that it would serve as Contemporary's new headquarters. When the facility was completed, Defendant had Contemporary enter into a long-term, above-market, triple-net lease[3]

---

[2]Plaintiffs' Complaint does not explain how it was possible for Defendant to remove directors at his own initiative, but presumably he accomplished this, if at all, through shareholder action by voting the ESOP's shares as trustee.

[3]A triple-net lease is one in which the lessee is responsible for taxes, insurance, and maintenance expenses in addition to rent.

with him for use of the facility. After Contemporary's relocation, Defendant sold the property where Contemporary had previously been located (which he also owned), but did not reimburse Contemporary for the cost of the improvements it had made on the property. Defendant then went on to sell the new facility to a third party, and assigned his lease with Contemporary to the purchaser.

Defendant then allegedly embarked on a plan to dissolve and liquidate Contemporary, hiring outside consultants at the company's expense to further the plan. Plaintiffs claim that because of Defendant's management – or lack thereof – Contemporary was left with a depleted workforce, an ineffectual board of directors, and overall non-functioning management. Defendant ceased actively managing Contemporary for the final time sometime in 2008, and it was involuntary dissolved later that year.

Plaintiffs bring ERISA claims against Defendant for equitable and injunctive relief and damages, alleging that Defendant, in his role as ESOP trustee, breached fiduciary duties owed to the ESOP. Specifically, Plaintiffs claim that as ESOP trustee, Defendant breached his ERISA fiduciary duties by failing to remove himself as trustee or bring a derivative action – even if against himself – based on the mismanagement and self-dealing within Contemporary.

## II. LEGAL STANDARD

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give a short and plain statement "plausibly suggesting . . . that the pleader is entitled to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007). Under this standard, a claim is facially plausible where "the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (internal citations omitted). "Specific facts are not necessary; the statement need only

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). That said, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal alterations and citations omitted). Thus, application of this standard suggests a two-step analysis under which the court may first (1) determine whether there are factual allegations in the complaint sufficient to entitle the plaintiff to "the assumption of truth," and if so, (2) "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. 1937, 1950.

### III. DISCUSSION

Defendant argues that Plaintiffs' claims must be dismissed because (1) they are time-barred by the applicable statute of limitations, 29 U.S.C. § 1113; (2) the relief Plaintiffs seek can only be obtained by the ESOP itself, and accordingly, Plaintiffs are not entitled to individual relief; (3) Plaintiffs have failed to join indispensable parties, as not all ESOP participants are parties to this suit; and (4) Plaintiffs have not stated viable claims against him as ESOP trustee, in that the alleged breaches of fiduciary duties arose out of actions he took in a managerial capacity. Plaintiffs respond that (1) their claims are not time-barred because the three-year period did not begin to run until they had actual knowledge that Defendant breached fiduciary duties owed to the ESOP; (2) they recognize that they are not entitled to individual relief, and they therefore only assert claims on behalf of and for the benefit of the ESOP; (3) they have not failed to join indispensable parties, as individual ERISA plan participants are permitted to bring civil claims based on the plan fiduciary's breach of fiduciary duty; and (4) the alleged breach of fiduciary duty

5

was not in Defendant's corporate mismanagement, but rather in his failure, as ESOP trustee, to either remove himself from that position or bring a derivative action against himself.[4]

### A. *Statute of Limitations*

Defendant contends that Plaintiffs' claims are barred by the statute of limitations for ERISA breach of fiduciary duty claims, 29 U.S.C. § 1113, which provides that:

> No action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . after the earlier of –
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Defendant asserts that subsection (2) bars Plaintiffs' claims, as they had actual knowledge of his alleged breach of duty more than three years prior to the filing of this lawsuit. Plaintiffs argue that dismissal is inappropriate because the factual allegations in their Complaint do not support the inference that they had such knowledge.

The affirmative defense of statute of limitations may support a dismissal on a Rule 12(b)(6) motion where it is apparent from the allegations in the complaint that the defense applies. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (internal citations omitted); *see also Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) ("[T]he possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself

---

[4]Plaintiffs have expressly abandoned the allegations in their Complaint that Defendant's alleged acts of corporate mismanagement and self-dealing breached fiduciary duties owed to the ESOP. As a result, the Court does not address Defendant's argument that certain of those allegations attempt to assert state law claims pre-empted by ERISA.

establishes the defense.") (internal citations omitted).  Generally speaking, an affirmative defense based on a statute of limitations that requires a factual inquiry is not amenable to resolution on a motion to dismiss.  *See LePage v. Blue Cross & Blue Shield of Minn.*, 2008 WL 2570815, at *3 (D. Minn. 2008) (statute extending the limitations period where underlying statute is violated knowingly or with reckless disregard).

Plaintiffs filed this lawsuit on August 8, 2008, and it is not apparent from the face of their complaint that they had actual knowledge of Defendant's alleged breach of fiduciary duty as the ESOP trustee – his failure to bring a derivative suit challenging the mismanagement of Contemporary – prior to August 8, 2005.  Plaintiffs allege that the mismanagement took place based on a series of events and transactions spanning 2004-2008; there appears to be no basis, at least at the pleadings stage, for concluding that all of these events took place prior to August 2005 *and* that Plaintiffs were aware of the events at the time.  *See Ward v. Avaya, Inc.*, 487 F. Supp. 2d 467, 474-75 (D.N.J. 2007) (allegations that events took place in certain time-frame and that information about those events was available to plaintiffs insufficient to establish that plaintiffs had actual knowledge of events for statute of limitations purposes).

Furthermore, courts have recognized that where, as here, an alleged breach of fiduciary duty lies in the failure to bring a lawsuit, the breach itself does not occur (and the cause of action therefore has not accrued) until it is no longer possible for the fiduciary to bring that claim – either due to the applicable statute of limitations or some other circumstance.  *See Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1089 (7th Cir. 1992) ("[I]t is not until the trustees' delay in bringing suit has precluded (or at least prejudiced) their ability to recover that [the plaintiff] has a claim – and hence knowledge of a violation.  Absent some other evidence of unreasonable delay, then, the end-point of the statute of limitations on the primary claim will mark

the start of the limitations period on the [breach of fiduciary duty] claim . . . ."). Thus, even if Plaintiffs had actual knowledge of the alleged acts of mismanagement and self-dealing as of August 2005, to the extent they allege Defendant breached his fiduciary duties by not bringing a derivative action based on those acts, the statute of limitations on their claims did not begin to run until Defendant could no longer bring the derivative claim. This occurred at the earliest either in 2008 (when Contemporary was dissolved) or sometime in 2009 (if the events complained of did in fact all take place in 2004, based on Missouri's five year statute of limitations for breach of fiduciary duty claims). *See* Mo. Rev. Stat. § 516.120. In either case, the three-year limitations period in § 1113 would not expire until 2011 or 2012, placing Plaintiffs' claims – filed in August 2008 – well within the statutory period.

The Court therefore concludes that Defendant is not entitled to dismissal based on the statute of limitations for ERISA breach of fiduciary duty claims, 29 U.S.C. § 1113, because it is not apparent from their factual allegations that their claims are time-barred.

### B. *Propriety of Individual Relief*

Defendant contends that even if Plaintiffs have stated otherwise cognizable breach of fiduciary claims under ERISA, their claims must be dismissed because they are not entitled to individual relief. In the alternative, Defendant argues that all allegations purporting to seek individual relief should be stricken from Plaintiffs' Complaint. Plaintiffs respond that they only seek recovery on behalf of the ESOP – i.e., not individually.

Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), authorizes an ERISA plan participant to bring a civil action for recovery under 29 U.S.C. § 1109, which in turn establishes that a plan fiduciary may be held personally liable to the plan and subject to injunctive or other equitable relief to remedy losses resulting from a breach of fiduciary duty. *See* 29 U.S.C. §

1109(a). § 1109, however, is only intended to govern injuries to the plan as a whole, and a plan participant seeking to invoke § 1132(a)(2) must therefore bring her action in a representative capacity and may only seek relief that would inure to the benefit of the plan as a whole. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1024 (2008).

The Court finds that dismissal is unwarranted as Plaintiffs have adequately pled such claims. Plaintiffs allege that Defendant breached his fiduciary duties to the ESOP and all of its beneficiaries, and that as a result, the value of the ESOP's sole asset, Contemporary's stock, declined to zero. Both Plaintiffs' allegations and the relief sought – damages in the amount of the stock's depreciation – are based on alleged injuries to the Plan as a whole, making suit under § 1132(a)(2) appropriate. Although certain of Plaintiffs' allegations might be read as seeking individual relief, the parties are in agreement that all claims are asserted on behalf of the ESOP and that any recovery that might be obtained will be the ESOP's recovery – even if the recovery is ultimately distributed to individuals in accordance with the ESOP's governing documents. The Court concludes that the Complaint will be so construed, and it is therefore unnecessary to strike the disputed allegations.

### C. *Failure to Join Indispensable Parties*

Defendant next contends that Plaintiffs' Complaint must be dismissed under Federal Rule of Civil Procedure 19 for failure to join indispensable parties, in that Plaintiffs have not joined all ESOP beneficiaries to this suit. Plaintiffs argue that they have made a good faith effort to join all plan participants, and that as the beneficial owners of more than 80% of the ESOP's holdings, they are proper representatives of the ESOP as a whole.

ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), provides that "*a* participant, beneficiary or fiduciary" of an ERISA plan may bring a civil suit to establish the personal liability of a plan

fiduciary to the plan for breach of fiduciary duty. (emphasis added). Courts applying this provision to suits by individual plan participants have found that by its terms, it does not require them to take steps to represent the interests of absent plan participants. *See Waldron v. Dugan*, 2007 WL 4365358, at *6 (N.D. Ill. 2007) ("[S]ection 502(a)(2) expressly grants the right to bring fiduciary duty claims to 'participants,' and does not appear to require them to sue derivatively or to use any other special procedural devices to represent absent parties."); *Thornton v. Evans*, 692 F.2d 1064, 1080 n.35 (7th Cir. 1982) (recognizing that section 502(a)(2) authorizes suits by individual beneficiaries). Courts have reached this conclusion for the simple reason that there is no express requirement – either in § 1132(a)(2), within other ERISA provisions, or elsewhere – that all participants of an ERISA plan must be joined as plaintiffs in order to bring claims on behalf of the plan. *See Waldron*, 2007 WL 4365358, at *6-*7.

Nonetheless, Defendant argues that the other plan beneficiaries are in fact indispensable parties, in that they have a clear interest in the outcome of the lawsuit and their omission could expose Defendant to a multiplicity of lawsuits with inconsistent outcomes. *See* Fed. R. Civ. P. 19(a)(1)(B)(i-ii). In *Coan v. Kaufman*, cited by Defendant in support of this argument, the Second Circuit found, in affirming a grant of summary judgment for the defendants on an ERISA breach of fiduciary duty claim, that the plaintiff participant in a defunct 401(k) plan had failed to "take . . . steps to become a bona fide representative of other interested parties." 457 F.3d 250, 259 (2d Cir. 2006) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)). Unlike in the decisions cited above, the *Coan* court concluded that Congress's silence on whether class action treatment is mandatory or permissive for section 502(a)(2) suits indicates "that it deliberately declined to adopt any general rule." *Id.* at 260. The court therefore turned to the common law of trusts, under which trust beneficiaries are required to join the other beneficiaries

in suits against the trustee, unless it appears that the absent parties are adequately represented or are too numerous to be joined. *See id.* at 260-61. The court found that three principal problems might arise if it allowed the plaintiff to proceed without more assurance that the absent participants' rights were protected: (1) the possibility that she would reach a settlement benefitting her but not the plan as a whole; (2) how to distribute any recovery she might obtain, given that the plan was no longer in existence[5]; and (3) the potential for prejudice to other participants, if claim or issue preclusion principles were found to bar subsequent claims. *Id.* at 261-62.

Although the Court is skeptical that there is any procedural barrier to bringing section 502(a)(2) claims on an individual basis, the Court concludes that Plaintiffs are in fact adequate representatives of the ESOP. In stark contrast to the one-plaintiff situation in *Coan*, there are twenty-four named Plaintiffs in this litigation, claiming to be the beneficial owners of more than eighty percent of the ESOP's assets. Plaintiffs acknowledge that they are only entitled to pursue claims and to recover damages on behalf of the ESOP as a whole – resolving the *Coan* settlement problem – and they also recognize that any recovery would be deposited into the still-existing plan and distributed according to its terms – thus likewise resolving the distribution issue.

The Court does not believe, however, that the preclusion issue is helpful to ascertaining whether the absent ESOP participants are indispensable parties. The preclusive effect of any judgment the Court might reach in this litigation would be a speculative inquiry into whether

---

[5]"The court would likely be required to issue an order mandating that the now defunct . . . 401(k) plan be temporarily resuscitated, funds restored to it, its participants located, their entitlements calculated, and distributions disbursed to them. Without the benefit of a procedural mechanism for the protection of interested parties, it is unclear how the court could satisfy itself that their interests were in fact being taken into consideration without a great deal of improvisation, effort, and expense." *Coan*, 457 F.3d at 261-62.

Defendant could raise issue preclusion (or possibly even claim preclusion) in subsequent section 502(a)(2) suits by absent ESOP beneficiaries if he succeeds in this lawsuit, which would in any event be a matter for the subsequent court to decide. *See Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 525 (7th Cir. 1985) (second court determines preclusive effect of first court's judgment). Should these, or other, preclusion issues present themselves later, the preclusion inquiry also would necessarily be informed by the Court's conclusion here that these Plaintiffs were not required to join the absent plan participants. That is to say, the *Coan* court was concerned that absent class members "would be bound by a judgment that was reached without [their] involvement or reliable safeguards for [their] interests," 457 F.3d at 262, but in the Court's view, the fairness of binding – or not binding – a party to a judgment in a prior proceeding is a concern that is addressed by the preclusion doctrines themselves – for example in terms of whether an absent plan participant is in privity with (or should be seen as the same party as) Plaintiffs for preclusion purposes or whether a particular claim or issue has been fully and fairly litigated.[6]

The Court therefore concludes that Defendant is not entitled to dismissal based on a failure to join indispensable parties, as Plaintiffs appear at this stage to be adequate representatives of the ESOP and the interests of its beneficiaries. ERISA does not expressly require joiner of all plan beneficiaries as a prerequisite to a section 502(a)(2) action against a plan fiduciary, and there are no circumstances here suggesting that the absence of certain ESOP beneficiaries would be inordinately prejudicial to them or to Defendant.

---

[6]For the basics of federal claim and issue preclusion, *see, e.g.*, *Rutherford v. Kessel*, 560 F.3d 874, 877 (8th Cir. 2009) (claim preclusion); *Olson v. Mukasey*, 541 F.3d 827, 830-31 (8th Cir. 2008) (issue preclusion).

## D. Breach of Fiduciary Duty

Defendant argues that Plaintiffs have failed to state a claim for breach of fiduciary duty because a plan fiduciary, even if operating in dual roles as trustee and employer, is under no fiduciary obligation to bring a derivative suit against himself. Plaintiffs contend that ERISA's fiduciary duties required Defendant to either bring that lawsuit or remove himself as ESOP trustee.

"Borrowing from trust law, ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets." *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992). An ERISA claim for breach of fiduciary duty against a plan trustee requires allegations of the following elements: (1) that the defendant was a plan fiduciary; (2) that the defendant was acting in his capacity as plan fiduciary; and (3) that the defendant's conduct in that capacity breached an ERISA fiduciary duty. *In re Pfizer Inc. ERISA Litig.*, 2009 WL 749545, at *6 (S.D.N.Y. 2009) (citing 29 U.S.C. § 1109; *Pegram v. Herdrich*, 530 U.S. 211, 222-24 (2000)). ERISA provides that when a person is acting in a fiduciary capacity, he generally must comply with a statutorily-prescribed standard of care as well as prohibitions on self-dealing and dealing with the party in interest – that is, the employer. *See* 29 U.S.C. § 1104(a) (standard of care); 29 U.S.C. § 1106(a-b) (prohibited transactions).

The practicalities of ESOP administration – and indeed the practicalities of employee benefit administration generally – make the fiduciary duty inquiry even more complex, in that the plan trustee may also be an officer or director of the employer (or, as is the case here, both) who regularly makes corporate decisions that indirectly affect the plan and its beneficiaries. In order to make such dual roles feasible under ERISA and corporate law, ERISA provides that an individual is only a plan fiduciary to the extent:

13

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets;
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so; or
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Thus, an employer/fiduciary is permitted under ERISA to act "in accordance with its interests as employer when not administering the plan or investing its assets," and its "normal business decisions with potential collateral effects on prospective, contingent benefits" are not subject to the fiduciary duties owed to plan participants. *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 646 (8th Cir. 2007) (internal citations omitted).

The unique nature of an ESOP, moreover, dictates that an ESOP trustee's fiduciary duties are narrowed beyond the inquiry of whether the trustee is acting in a fiduciary or managerial capacity. An ESOP, in accordance with its twin purposes of providing retirement benefits and increasing employee ownership, is intended to invest primarily in the stock of the employing firm. *See* 29 U.S.C. § 1107(d)(6)(A); *Feilen*, 965 F.2d at 664. As such, ERISA provides a limited exemption for ESOP trustees from the otherwise-applicable duties to refrain from transactions between the plan and the party in interest, and from transactions between the plan and the trustee, at least with respect to transactions for "adequate consideration" involving certain securities and real property owned by the employer. *See* 29 U.S.C. § 1108(e) (exemption for ESOPs); 29 U.S.C. § 1106(a-b) (prohibitions that apply to non-ESOP plan fiduciaries); *see also* 29 C.F.R. § 2550.408e(a), (d) (clarifying the applicability of the exemption and defining "adequate consideration").[7]

---

[7] It was these exemptions that permitted the ESOP to borrow from Contemporary in order to purchase Contemporary's stock from Defendant (a series of transactions that Plaintiffs do not

14

In applying these standards, the Eighth Circuit has recognized that when an employer/fiduciary becomes aware of corporate action that would give rise to a derivative claim, the decision whether or not to bring such a claim – even if the proper defendant would be the employer/fiduciary himself – is subject to ERISA's fiduciary duties. *Feilen*, 965 F.2d at 667. As the court explained, this is true even where the underlying corporate acts are those that may normally be taken without regard to the interests of the ESOP or its beneficiaries:

> The basis for this ERISA action is not the perpetration of the fraud on [the corporation's] shareholders itself, but the fact that, knowing the Plan's investment had been impaired by their own fraudulent acts, defendants, acting as fiduciaries, failed to take any steps to protect the Plan's assets from dissipation.

*Id.* at 668 (quoting *Canale v. Yegen*, 782 F. Supp. 963, 968 (D.N.J. 1992)). Thus, to proceed under such a theory, the plaintiff must prove both (1) that the fiduciary, by failing to bring the derivative claim, breached fiduciary duties owed to the plan; and (2) that the derivative suit would have been successful. *Id.* at 667.

Plaintiffs have adequately pleaded such claims against Defendant for breach of fiduciary duty under ERISA. Plaintiffs' Complaint alleges that Defendant took specific actions – principally a variety of acts of corporate mismanagement along with certain self-dealing transactions with Contemporary – that breached the fiduciary duties he owed, as a Contemporary director and officer, to Contemporary and its shareholders. It further alleges that Defendant had knowledge of those actions – an obvious inference, but alleged nonetheless – and that he was acting in the capacity of ESOP plan fiduciary when he failed to remove himself from his management position(s) or bring a derivative suit against himself. In short, Plaintiffs have alleged all of the

---

contend was improper). The exemption for dealing with a party in interest made it permissible for the ESOP, represented by Defendant, to enter into the loan with Contemporary, and the exemption concerning self-dealing allowed Defendant to sell his shares of Contemporary to the ESOP.

elements of a claim for breach of fiduciary duty under ERISA, *see In re Pfizer Inc. ERISA Litig.*, 2009 WL 749545, at *6 (S.D.N.Y. 2009), and have also alleged a specific breach of that duty recognized by existing case law, *see Feilen*, 965 F.2d at 667.

Defendant contends that even if this is true, Plaintiffs' claims must still be dismissed because Plaintiffs failed to allege that they made a demand on him or on Contemporary's board of directors that the challenged action be remedied. Federal Rule of Civil Procedure 23.1 provides that derivative action plaintiffs generally must, in their complaint, "state with particularity" the efforts they took "to obtain the desired action" from the corporation or other shareholders and the reasons why that effort was unsuccessful or unnecessary. Fed. R. Civ. P. 23.1(b)(3). Defendant claims that Rule 23.1 would have required him to futilely make this demand upon himself prior to bringing the derivative suit; thus, he argues that in light of the Rule's purpose of preventing abuse of derivative actions, it should be read in these circumstances to require Plaintiffs to plead that they made such a demand on him.

The Court concludes, however, that Rule 23.1 has no application to this case because there are no actual shareholder derivative claims at issue. *See* Fed. R. Civ. P. 23.1(a) ("This rule applies when one or more shareholders or members of a corporation . . . bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."). Although Defendant contends that the Court should read the Rule as adding an additional demand element to Plaintiffs' claims, Rule 23.1 does not add any substance even to a shareholder derivative claim; it is merely a procedural rule under which courts are required to test the pleadings of a representative plaintiff. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) ("Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings. Indeed, as a rule of procedure issued pursuant to the Rules Enabling Act, Rule 23.1 cannot be

understood to "abridge, enlarge or modify any substantive right."). Plaintiffs do not wish to maintain a derivative suit on Contemporary's behalf, and in any event that is likely no longer possible given that Contemporary no longer exists. For the same reason, Plaintiffs do not seek to compel Defendant to bring a derivative action against himself. Because no actual derivative claim is being, or will be, asserted in this litigation, Rule 23.1's pleading prerequisites for a derivative suit are by their terms inapplicable.

The Court therefore concludes that Plaintiffs' claims for breach of fiduciary duty against Defendant will not be dismissed. Binding authority establishes that an ERISA fiduciary also acting in a corporate capacity may have a fiduciary duty to bring a derivative action against himself based on knowledge of acts of corporate mismanagement or self-dealing, and Plaintiffs' claims sufficiently allege that Defendant had and breached that duty. Having found that Plaintiffs have stated valid claims under ERISA on that basis, the Court does not consider at this juncture whether Defendant's failure to remove himself as ESOP trustee, standing alone, could likewise amount to a breach of fiduciary duty under ERISA.

### E. *Motion for More Definite Statement*

In the alternative to his request that Plaintiffs' claims be dismissed, Defendant argues that the Court should require Plaintiffs to provide a more detailed factual basis for their claims.

Federal Rule of Civil Procedure 12(e) provides that a party may move for a more definite statement in response to a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." A pleading that meets Rule 8(a)'s notice pleading standard and puts the other party on notice of the claim does not provide a basis for requesting a more definite statement. *Greater St. Louis Const. Laborers Welfare Fund v. Johnson Flatwork & Finishing, Inc.*, 2009 WL 1383849, at *1 (E.D. Mo. 2009).

As discussed above, Plaintiffs' pleadings adequately assert claims for breach of fiduciary duty under ERISA, and the Court therefore will not require Plaintiffs to supplement their pleadings. Plaintiffs' Complaint contains specific factual allegations as to how Defendant allegedly breached his duties – among other things, abusing his corporate authority and engaging in one-sided real estate transactions with Contemporary – that are more than sufficient to notify Defendant of the nature of their claims. Defendant argues that Plaintiffs' Complaint does not provide enough detail concerning the timing of the alleged breaches and Plaintiffs' knowledge, but even if notice pleading required that degree of detail (which it does not), Plaintiffs would still not be required to plead that information because it is relevant not to their claims but to Defendant's statute of limitations defense.

The Court therefore finds that Defendant's request for a more definite statement will be denied, as Rule 8(a) only requires notice pleading, and certainly does not require Plaintiffs to plead facts related to Defendant's affirmative defense(s).

## IV.  CONCLUSION

Defendant's Motion will be denied on all grounds. First, it is not apparent from the face of Plaintiffs' Complaint that the applicable statute of limitations, 29 U.S.C. § 1113, bars their claims, making dismissal under that statute inappropriate. Second, Plaintiffs, as ESOP beneficiaries, maintain that they only seek relief on behalf of the ESOP itself, and their Complaint can be fairly read in that manner. Thus, there is no reason to dismiss Plaintiffs' claims on the ground that they seek relief to which they are not entitled, and it is also unnecessary to strike the disputed allegations. Third, the Court finds that the ESOP beneficiaries not present as Plaintiffs in this litigation are not indispensable parties whose absence would warrant dismissal under Federal Rule of Civil Procedure 19. Last, the Court concludes that Plaintiffs' Complaint, alleging that

Defendant breached his fiduciary obligation to the ESOP by failing to bring a derivative suit against himself based on his alleged corporate acts of mismanagement and self-dealing, states valid claims under ERISA for monetary, injunctive, and equitable relief.

Additionally, it became clear in the briefing of this Motion that Plaintiffs have expressly abandoned certain allegations and theories of relief stated in their Complaint.  Specifically, Plaintiffs no longer claim that Defendant's alleged breaches of fiduciary duties owed to Contemporary as a matter of corporate law also amounted to breaches of fiduciary duties under ERISA.  Plaintiffs will therefore be estopped from attempting to re-assert those theories at subsequent stages in this litigation.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Case for Failure to State a Claim, Motion to Dismiss for Failure to Join Necessary and Indispensable Parties, or in the alternative, Motion to Strike and Motion for More Definite Statement [doc. #39] is **DENIED**.

Dated this <u>1st</u> Day of <u>February</u>, <u>2010</u>.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE